BENJAMIN RACKLEY & al. versus WASHINGTON SPRAGUE & al.

L conveyed two lots of land which included a mill privilege and saw and grist mill on the premises to S by deed, containing a reservation in these words, " excepting and reserving out of the same, the one half of the grist-mill and saw mill built by said S on said lots, together with one half of all the privileges appertaining to the said mills, as the improving of the mill yard, &c. Also said S has a right of raising a head of water, all seasons of the year, not damaging the owners of the land above, as also said L reserves to himself;" *it was held* that this gave a license to flow the grantor's other land; and that L, as to his part of the privilege, was to have the same right to flow the contiguous land conveyed, as S had to flow the other land of the grantor.

The administrator of a deceased respondent in a complaint for flowing, under the Statute, is not entitled to come in and take upon himself the defence of the complaint and recover costs.

THIS was a complaint under the Statute, for flowing, and is submitted to the Court for their decision upon the following statement of facts.

It was instituted against Washington Sprague and Moses Sprague, and during its pendency, Moses has deceased and Augustus Sprague administrator of the estate of Moses has appeared and assumed the defence. The original respondents claimed to be the owners of certain pieces of land in Greene, with which is connected a certain stream whereon are the dam and the mill which occasion the flowing of the land of the complainants, for which they seek redress. The title to the land and water privileges where the dam and mills are situate, in said Greene, was derived to William Sprague, father of the respondents, by two conveyances, at different times, and from different persons, viz. the first from Moses Little, by deed dated Sept. 13, 1783. This deed purported to convey " Lot No. 151, and lot No. 164, together with all the privileges and appurtenances thereto belonging, excepting and reserving out of the same, the one half of the grist mill and saw mill built by said Sprague on the said lots, together with one half of all the privileges and appurtenances to the said mills, as the improving a mill yard, &c. Also, said Sprague shall have a right of raising a head of water at all seasons of the year, not damaging

the owners of the land above, as also said Little reserves to himself."

The second conveyance was from Josiah Little, and was dated July 11, 1818. The title by divers conveyances passed to the original respondents in this case.

The complainants derive title to the land which they allege to be flowed by the respondent's mill and dam, by deed from Edward Little to themselves dated May 4th, 1837. Edward Little is the son of Josiah, and grandson of Moses — and derived his title to the land, by him conveyed to the complainants by his deed aforesaid, through the said Moses and Josiah. The complainants derive their title to the land flowed, from the same source from which the respondents derived their title to the land and stream, whereon the dams and mills are situate, and at the time of the deeds from Moses and Josiah respectively to William Sprague as aforesaid — the said Moses and Josiah were respectively seized of the land which the complainants allege to be injured by the flowing of the original respondents' dam and mill. The dam of the original respondents was erected prior to 1808. The dam is not now nor has it been at any time since 1808, higher than it was at that time. The land of the complainants has not at any time since July 11, 1818, been flowed higher, than was the custom of the owners of the mill and dam to flow the same from 1808 to 1818. The aforesaid dam flows the land of the complainants to their injury.

If the Court should be of opinion from the facts above stated, and the construction of the several deeds therein referred to, exclusive of a memorandum on the deed of July 11, 1818, (for the terms and effect of which, see *Rackley* v. *Sprague*, 17 Maine R. 281,) that the complainants have no right to recover damages of the respondents for flowing, then said complaint is to be dismissed with costs; but otherwise, judgment is to be rendered against the respondents, and commissioners are to be appointed to estimate the damages, and the complainants are to have their costs. And the Court are also to determine whether Augustus Sprague can come in as

administrator and take upon himself the defence of the complaint — and to make such decision thereon as may be deemed proper.

*Wells*, for the complainant.

*Emmons*, for the respondents.

The opinion of the Court was delivered by

WESTON C. J. — When this case was under consideration on a former occasion, the construction of the deed of July, 1818, from Josiah Little to William Sprague, was settled, without reference to any prior deed. Same case, 17 Maine R. 281. We see no reason to change the view we then took of the rights of the parties, so far as they depended upon that instrument. In the agreed statement of facts now before us, a new deed is presented, that of Moses Little to William Sprague, dated Sept. 13, 1783. It remains to be determined, whether the complaint can be sustained, both deeds being considered together.

The deed from Moses Little conveyed two lots of land, which included the mill privileges in question, with a saw and grist mill, then standing on the premises. The deed, however, contained a reservation in these words : " Excepting and reserving out of the same, the one half of the grist mill and saw mill, built by said Sprague on said lots, together with one half of all the privileges appertaining to the said mills, as the improving of a mill yard. Also, said Sprague has a right of raising a head of water, at all seasons of the year, not damaging the owners of the land above ; as also said Little reserves to himself." By the owners of the land above, must be understood, other owners. It was a clause introduced by way of precaution, intended to protect Little from any implication, that he might be held answerable to other owners above, by the head of water which Sprague might raise. If it had intended to apply to the lands of the grantor, the language would have been, without doing damage to my other land, or that of any owner above. To construe the words as they stand to

include the grantor's land, would leave the clause, expressly granting to Sprague the right of raising a head of water, at all seasons of the year, without legal effect. He had a right to flow the lands, passed by that conveyance, without the license of the grantor. To give that license any sensible meaning, it must be held to apply to the grantor's other lands. The meaning of the other part of the reservation is, that Little, as to his half of the privilege, was to have the same right to flow the contiguous land conveyed, as Sprague had Little's other land, which he retained.

Upon this construction, which we are satisfied must be the true one, Sprague derived the same right from that deed, which it was before decided he did from the deed of Josiah Little of the other half of the mills and privilege, which his father, Moses Little, reserved. In the last deed, the land, which Sprague might flow, is more explicitly limited to the land of Little. Josiah, the son, besides being privy in estate, was conversant of his father's previous conveyance, having witnessed the deed ; and he was well aware that Sprague had a right to flow the Little lands, and was equally desirous to avoid any implication, that he was to be liable to others. According to the agreement of the parties, the complaint is to be dismissed, and the surviving respondent to be allowed his costs.